COUNTY OF LINCOLN, APPELLEE, V. PROVIDENT LOAN AND INVESTMENT COMPANY ET AL., APPELLEES, JESS M. BURNETT ET AL., APPELLANTS.

22 N. W. 2d 609

FILED APRIL 19, 1946.  No. 32037.

*Hoagland, Carr & Hoagland,* for appellants.

*Shuman & Overcash,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE JJ.

MESSMORE, J.

The County of Lincoln instituted a tax-foreclosure proceeding under section 77-2041, Comp. St. 1929, against defendants, Zell A. Russell and Emma R. Russell on July 27, 1940. The defendants, Zell A. Russell and Emma R. Russell, on May 9, 1944, filed their petition in the original tax-foreclosure action as aforesaid, to set aside and vacate an order of sale, the confirmation thereof, the sheriff's deeds issued to the appellant, Jess M. Burnett, and to quiet title in the plaintiffs (appellees) and to permit them to redeem.

The petition of the Russells, insofar as need be considered on this appeal, alleged in substance as follows: That the County of Lincoln filed its action to foreclose tax liens against Zell A. Russell and Emma R. Russell, husband and wife. The decree of foreclosure was entered October 18, 1940. For many years prior thereto, and at the time of the commencement of such action and at all times since, the Russells owned the northwest quarter of section 8, township 16, range 28, Lincoln County, Nebraska, jointly, and Emma R. Russell owned the fee in the southwest quarter of said section, and the Russells were in actual possession of the land. During February 1941, Zell A. Russell paid to the then clerk of the district court the full amount of all taxes, interest, and costs due upon the decree of foreclosure, and thereby effected a full and complete redemption of the land. The Russells recently learned that the said clerk of the district court fraudulently failed, neglected, and omitted to satisfy the lien for taxes as provided for by law, and embezzled the money so paid to him. That the decree of foreclosure, order of sale and sheriff's sale, include taxes assessed for the years 1936, 1937, and 1938 for which there had been no tax sale of any kind prior to the sheriff's sale had on January 20, 1944, and said sale was confirmed and sheriff's deeds executed, delivered, and recorded long prior to the expiration of two years from the date of sale. That the land was sold for an unconscionably low price and for a small fraction of its value. The Russells, through their attorney, offered to pay the purchaser $185 and interest at 12 percent per annum from the date of sale to him, which

was rejected, the same offer being renewed in the petition.

The answer contained a general denial, and an admission the Russells farmed a part of the land at various times but were not in possession only as they farmed it, and did not live on the land; alleged, in addition, that the Russells knew of the tax-foreclosure proceedings and that the land was to be sold, and did not redeem the land from tax sale, but were advised by the clerk of the court a sale was being had, and are now estopped to claim the land as against the innocent purchaser; that the sale was confirmed without objections.

The reply was a general denial.

In a judgment entered July 20, 1945, the trial court found in favor of the plaintiffs (appellees) and against the defendants (appellants). The purchasers, Jess M. Burnett and Rosa Burnett, appeal.

The necessary parts of the judgment involved in this appeal are hereafter set forth in the opinion as occasion requires.

The record discloses that Lincoln County, on July 27, 1940, filed a tax-foreclosure action against Zell A. Russell and his wife, Emma R. Russell, for delinquent taxes on the west half of section 8, township 16, range 28, owned by the Russells, for the years 1930 to 1935, inclusive. The tax-sale certificates were dated April 6, 1937. Thereafter the county treasurer prepared a statement relative to the subsequent taxes due on the land in question, and as a consequence thereof the 1936 taxes together with interest to March 1, 1938, and the 1937 taxes together with interest to July 1, 1940, and the 1938 taxes together with interest to July 1, 1940, were included in the tax-foreclosure proceedings, the order of sale, the sheriff's sale, and decree of confirmation.

The decree of foreclosure was entered October 18, 1940. The defendants, Russell, were in default and their default was entered. The court found that the property sold for a fair and reasonable value under the conditions and circumstances, and if offered and sold again would not realize

a greater amount. The court further found that more than two years elapsed between the date of the purchase of the tax-sale certificate upon which each of the causes of action involved are based, and the date of the institution of this foreclosure action; that the owners' right of redemption had expired. Order of sale was issued December 14, 1943; sale was had January 20, 1944; sale was confirmed upon application of counsel for the County of Lincoln January 31, 1944; and deed was executed on the same date and recorded on February 16, 1944. The proceedings were regular in form and conducted as provided for by law. The purchase was made by appellant, Jess M. Burnett, for $185.

We hereafter refer to Zell A. Russell as Russell, or where necessary to refer to both Zell A. Russell and Emma R. Russell we refer to them as the Russells.

Russell first learned from Jess M. Burnett late in April 1944, that Burnett had bought the land in at sheriff's sale and was then demanding possession. Russell then made an offer to Burnett to pay the amount Burnett had paid at sheriff's sale, $185, with interest at 12 percent per annum from date of sale, and costs incurred, which was rejected.

The petition to foreclose the tax-sale certificate originally contained eleven causes of action against the Russells, numbers 19 to 29, inclusive. The first three causes of action cover the half section involved in this case and the southeast quarter of the same section. The other causes of action included other lands owned by the Russells. On August 26, 1940, the answer day in the tax-foreclosure proceedings, Russell called at the office of Lowell C. Davis, the special attorney appointed by the county to represent it in tax-foreclosure cases, and at that time gave him a check for $337.43, which covered the amount of the taxes being foreclosed upon the 22nd to the 25th causes of action, and the same were dismissed. On January 4, 1941, Russell paid to the clerk of the district court the amount of $436.26, in satisfaction of the 26th to the 29th causes of action. On January 28, 1941, Russell paid the clerk of the district court $256.12, which redeemed a quarter section of land joined to

the land in controversy and a part of the same section. He did not take a receipt therefor, but a receipt did appear in the records of the office of the clerk of the district court. Thereafter Russell talked to Lowell C. Davis about paying the balance of the taxes, and was informed by him that he could pay the clerk of the district court without stopping at Davis' office. On February 7, 1941, Russell testified, he borrowed $200 from his son Gilbert, and both went to the office of the clerk of the district court where Russell paid to the clerk the amount of $228.20 to redeem the land involved. The payment was made in cash. He did not take a receipt. The clerk denied that the payment had ever been made to him, and the records of his office do not show that such a payment had been made. At a later date the clerk of the court entered his plea of guilty to embezzlement and was sentenced. It is Russell's contention that the clerk embezzled the money paid to him by Russell.

All subsequent taxes against the land not included in the tax-foreclosure decree were paid by Russell. This is evidenced by tax receipts in evidence, dated December 6, 1943, for taxes for 1939, 1940, 1941, and 1942. These tax receipts further disclosed a notation, "Unredeemed Tax Sales No. 1728 and 1735," the identical tax certificates foreclosed in the instant case.

On the date these taxes were paid to the county treasurer, the treasurer discussed with Russell about the unredeemed tax sales and told him they were then outstanding, and Russell informed the treasurer that these amounts had been paid to the clerk of the district court for such unredeemed taxes. On the same day Russell went to the clerk of the district court's office and talked to the deputy clerk, and she informed him that the taxes on the northwest quarter of section 8 had not been satisfied, and gave him a slip of paper showing such fact.

On January 11, 1944, the treasurer informed Russell there was some kind of tax foreclosure with reference to the land and he better see about it, and on January 12, 1944, the treasurer wrote Russell a letter wherein he in-

formed him that the clerk of the district court had advised his office to the effect that the land he paid the subsequent taxes on was being advertised for sale under tax-sale foreclosure. This letter was directed to Route 2, North Platte, while Russell's address is Route 2, Stapleton. He claims that he never received the letter. The letter was not returned to the treasurer.

The judge who entered the confirmation of sale happened to be in the office of the clerk of the district court in December 1943, or January 1944, and overheard some conversation had by somebody in the office with Russell. wherein Russell contended he had paid the taxes on the land in question. The judge testified there was controversy over it. The successor-clerk of the district court had a conversation with Russell before the sale under the tax-foreclosure proceedings, and Russell informed him that the clerk's office was wrong when it showed that the taxes were unpaid, he had a receipt for the taxes, a redemption receipt, and the clerk informed him that he had checked through the receipts and the taxes were not paid, and the records disclosed the taxes had not been paid.

The evidence is that at the time of sale and confirmation thereof, as testified to by a real-estate dealer, the value of the land was approximately $12.50 per acre. Zell A. Russell testified the value was $12.50 to $15.00 per acre, and his son Gilbert testified it was worth around $15.00 per acre. The land was fenced for four miles with three galvanized wires attached to iron posts set in cement at the corners, as testified to by Russell. Burnett testified that the land was worth around $300 or $400.

Russell contends that the evidence conclusively discloses that he paid to the clerk of the district court the amount necessary and sufficient to redeem the land. The trial court found the evidence was insufficient to justify a finding that Russell paid into the court the amount necessary to redeem the real estate from the decree of foreclosure.

From a review of the evidence on this phase of the case, we conclude that the trial court was not in error in its

finding in such respect.

As heretofore set out, the decree of foreclosure included taxes for the years 1936, 1937, and 1938. The trial court decreed that the petition filed by the County of Lincoln in the tax-foreclosure action was filed less than two years after the taxes for 1938 were due, that the confirmation of the sales of real estate were premature, and the Russells still had the statutory time within which to redeem from the sale of the real estate had on January 20, 1944.

Apparently it is Russell's contention that the 1938 taxes which were included in the tax-foreclosure proceedings did not become due until January 1, 1939, hence two years had not elapsed when the petition was filed, and neither did two years elapse between the date of the sheriff's sale and the date of confirmation. The sheriff's sale occurred January 20, 1944, and the confirmation January 31, 1944. Two years from the date of the sale therefore would not expire until January 20, 1946.

We conclude the judgment of the trial court in such respect is in error, as shown by the following authorities.

In Connely v. Hesselberth, 132 Neb. 886, 273 N. W. 821, this court held: "Owners and others interested in realty, sold under decree foreclosing valid tax sale certificate, where foreclosure was commenced more than two years subsequent to issuance of tax sale certificate, are barred from the right of redemption on confirmation of such judicial sale."

In County of Madison v. Walz, 144 Neb. 677, 14 N. W. 2d 319, it was said: " * * * where there has been a valid administrative sale and a valid tax sale certificate issued therefor by the county treasurer to the county and the latter has not brought foreclosure action until more than two years after the issuance of the tax sale certificate, as in the case at bar, then the owner or other person interested is not entitled to two years in which to redeem from the confirmation of sale under decree of foreclosure. He is entitled to only one two-year period for redemption which has been given from the time of the administrative sale

and before commencement of the foreclosure action. It is true, however, that in such case he is entitled to an additional period in which to redeem, that is, at any time prior to the confirmation of the sale." See Connely v. Hesselberth, *supra;* Peterson v. Swanson, 133 Neb. 164, 274 N. W. 482; Nolan v. Klug, 134 Neb. 860, 279 N. W. 791; Knox County v. Perry, 142 Neb. 678, 7 N. W. 2d 475; Coffin v. Maitland, 146 Neb. 477, 20 N. W. 2d 310.

"A county purchasing and foreclosing a tax sale certificate on real estate does so as trustee of an express trust for the use and benefit of the state and all other governmental subdivisions entitled to participate in the distribution of the proceeds. The trust property or trust res under these circumstances is the tax sale certificate with the rights evidenced thereby. Prior and subsequent taxes become merged in and a part of the certificate." County of Madison v. Walz, *supra.* See, also, City of McCook v. Johnson, 135 Neb. 270, 281 N. W. 69.

The trial court decreed that even if such confirmation was not premature, that no notice of application for confirmation of sale, nor that the sheriff's deed would be applied for, was given to the Russells, and the failure to give such notice was such an unavoidable casualty as to give the court the power, and to give rise to the duty of the court, to set aside the confirmation of sale and of sheriff's deeds after the term in which the said order of confirmation was entered, and allow Russells to redeem the real estate from sheriff's sale by paying into the court the amount paid by the purchaser, Jess M. Burnett, and 12 percent interest thereon from date of sale, and costs incurred in the action.

Section 3, article VIII, of the Constitution of Nebraska, provides: "The right of redemption from all sales of real estate, for the non-payment of taxes or special assessments of any character whatever, shall exist in favor of owners and persons interested in such real estate, for a period of not less than two years from such sales thereof. Provided, that occupants shall in all cases be served with personal

notice before the time of redemption expires."

The trial court apparently was acting under section 25-2001, R. S. 1943, which provides in part: "A district court shall have power to vacate or modify its own judgments or orders after the term at which such judgments or orders were made * * * (4) for fraud practiced by the successful party in obtaining the judgment or order; * * * (7) for unavoidable casualty or misfortune, preventing the party from prosecuting or defending; * * * ," and the holding of this court that the statute enumerating grounds under which a judgment may be vacated after expiration of term at which judgment was rendered does not provide an exclusive remedy, but such grounds are concurrent with independent equity jurisdiction. See Pavlik v. Burns, 134 Neb. 175, 278 N. W. 149; In re Estate of Jensen, 135 Neb. 602, 283 N. W. 196.

The trial court was in error in its finding requiring notice of application for confirmation of sale or notice that sheriff's deeds would be applied for should be given the Russells.

This court has determined the matter of personal notice in such respect as follows:

In Connely v. Hesselberth, *supra*, the court quoted with approval the following from Commercial Savings & Loan Ass'n v. Pyramid Realty Co., 121 Neb. 493, 237 N. W. 575, "Personal notice required in sale of land for taxes, as provided in section 3, art. VIII of the Constitution, applies in all cases where a tax deed is sought, but is not required in sales under tax foreclosures in section 77-2039, Comp. St. 1929." See, also, Van Etten v. Medland, 53 Neb. 569, 74 N. W. 33.

Russell raises the question of the value of the land being many times more than the amount the purchaser paid for it, and that the land sold for a grossly inadequate amount. The evidence of value is in conflict, as heretofore set out. However, the Russells did not deem the land of sufficient value at the time of the filing of the foreclosure proceedings and during the course thereof, to enter their appearance or

file objections to the confirmation of the sale wherein the court entered judgment finding that the land sold for its reasonable value and would not realize a greater amount on resale. The sale was public and open, and there were bidders present, none of whom thought the land of sufficient value to raise the appellant's bid. Russell did redeem certain parcels of his land before it went to sale. He did not, after being fully informed about the unredeemed tax sales upon the land in question, investigate very extensively. He merely concluded he paid in cash to the clerk of the district court the amount necessary to redeem, and the clerk, by being a self-confessed embezzler, had embezzled the money so paid. It would seem only reasonable, with his knowledge of the facts and conditions, that he would have made some endeavor to ascertain why the clerk of the district court failed to perform his duty with reference to the redeeming of this land, if such be the fact.

The evidence is bare of any fraud or false testimony on the part of the appellant in bidding in the land or at the time of the confirmation thereof, had upon application of counsel for the County of Lincoln, pursuant to which appellant received the sheriff's deeds and recorded them. There is no claim made by Russell that any fraud or false testimony was practiced on the part of the appellant in obtaining the land in question. Russell, if he believed the value of the land be in such amount as is indicated by his testimony, was negligent by his own conduct as heretofore pointed out. Certainly no fault attaches to the purchaser in this respect.

Only when a judgment is clearly shown to have been obtained by fraud or false testimony and which it would be against good conscience to enforce, and proper showing of due diligence is made, will a judgment be vacated after term in which rendered under subsection 4 of section 25-2001, R. S. 1943. See Pinches v. Village of Dickens, 131 Neb. 573, 268 N. W. 645; Kielian v. Kent & Burke Co., 131 Neb. 308, 268 N. W. 79.

The Russells .(appellees) cross-appealed from the court's

judgment in taxing the costs to them, the successful parties in this litigation. In view of our holding, the costs follow the judgment here directed to be entered, and further consideration of the cross-appeal is unnecessary.

For the reasons given in this opinion, the judgment of the trial court is reversed and the case remanded with directions to reinstate the judgment of confirmation of sale entered in the tax-foreclosure proceedings herein, and dismiss the petition of the appellees, Zell A. Russell and Emma R. Russell.

REVERSED AND REMANDED.